UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANAGEMENT REGISTRY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) 17 C 8834 |
| MILAN BATINICH, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Now before the Court is a motion from Defendant Milan Batinich ("Batinich") comprised of three requests. First, Batinich requests the Court to strike Christin Good's December 14, 2017 Declaration from the record. Second, in light of the new record should his request to strike be granted, Batinich requests a Rule 54(b) reconsideration of our January 26, 2018 Order ("Order") denying his motion to dismiss for lack of personal jurisdiction. Finally, Batinich asks the Court to reconsider the same Order's denial of his request to transfer the case to Minnesota. For the following reasons, we grant Batinich's motion to reconsider our Order denying his transfer request and order this suit to be transferred to the District of Minnesota. We deny as moot both Batinich's motion to strike Christin Good's December 14 Declaration and his motion to reconsider our Order declining to dismiss the case for lack of personal jurisdiction.

## I. Reconsideration of Our Order Denying Transfer to Minnesota

On January 26, 2018, the Court issued an Order in favor of Plaintiff Management Registry, Inc. ("M.R.I."), denying Batinich's requests to dismiss this lawsuit ("Illinois action") for lack of personal jurisdiction or, in the alternative, to transfer the case to a more appropriate venue in Minnesota pursuant to 28 U.S.C. § 1404(a).  As to the transfer question, we denied Batinich's request in large part because "neither Batinich nor the Complaint suggest[ed] personal jurisdiction would lie for this controversy in Minnesota."  Our Order stated that Batinich made a "fatal mistake" by "devot[ing] no attention" to the question of whether venue and jurisdiction were proper in the District of Minnesota.

An assortment of similar venue transfer tests have been promulgated in the Seventh Circuit and Northern District.  In every case, the operative test requires that venue and jurisdiction lie in the transferee court.  *See Jaramillo v. DineEquity, Inc.*, 664 F.Supp.2d 908, 913 (N.D. Ill. 2009) (the second of four factors for venue transfer considerations requires that venue and jurisdiction lie in the transferee court) (citing *Grossman v. Smart*, 73 F.3d 364 (7th Cir. 1995)); *Bryant v. ITT Corp.*, 48 F.Supp.2d 829, 832 (N.D. Ill. 1999) (in a three-prong test, the first factor mandates that venue be proper in both the transferor and transferee courts).  As Batinich seemingly failed to address the threshold question regarding the propriety of the transferee court's jurisdiction and venue, the Court denied his request swiftly, declining to address the

more discretionary § 1404(a) factors altogether. Indeed, we noted that Batinich may well have conceded that personal jurisdiction did not lie in his suggested transferee court when he stated in reply briefing that he "will not contest personal jurisdiction in the District of Minnesota."

Now, Batinich requests that we reconsider our Order pursuant to Federal Rule of Civil Procedure 54(b), which reads in relevant part, "any order or other decision…that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties…may be revised at any time before the entry of a judgment…." As "[t]ransfer orders…are not appealable final decisions," *Hill v. Potter*, 352 F.3d 1142, 1144 (7th Cir. 2003), reconsideration requests are best handled by a district court under Rule 54. "'Motions for reconsideration serve a limited function; to correct manifest errors of law or facts or to present newly discovered evidence.'" *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F.Supp 656, 665 (N.D. Ill. 1982)). "[A] motion to reconsider is only appropriate where a court has misunderstood a party…made a decision outside the adversarial issues presented…made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Broaddus v. Shield*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

Batinich insists that the Court "patent[ly] misunderst[ood]" his position when it took him to be conceding to a lack of personal jurisdiction in Minnesota. In his motion to reconsider, Batinich states, "That is not at all the impression [he] meant to create or what the facts in the record demonstrate." Batinich maintains that by way of his comment suggesting that he would not contest personal jurisdiction in Minnesota, he intended to "assure the Court that even aside from the facts that established personal jurisdiction attached to Batinich [in Minnesota], he would have consented to jurisdiction even if jurisdiction did not otherwise attach (which it did)." According to Batinich, he only declined to directly address the viability of venue and jurisdiction in Minnesota "because he did not believe that this prong was in dispute."

M.R.I. offers robust responses to the other matters presently before the Court (the evidentiary viability of Christin Good's declaration and whether the Court should reconsider its prior ruling on personal jurisdiction in Illinois). M.R.I. declines, however, to address Batinich's request to reconsider our transfer ruling. While M.R.I.'s declination is surprising, it is only mildly so, as Batinich's suggestion that we misunderstood his position is buttressed by the record before us. The following evidence in the record appears uncontested:

i. Batinich currently works for A.W. Companies, a Minnesota company, with Minnesota customers and clients.

ii. Batinich has provided services for A.W. Companies in Minnesota, Wisconsin, and Texas.

iii. While working in Madison, Wisconsin, Batinich called an "emergency team meeting" with other employees of his former employer, M.R.I.

iv. Batinich's "emergency team meeting" is a focal point of M.R.I.'s Amended Complaint in a lawsuit filed in the District of Minnesota against A.W. Companies and its owners ("Minnesota action"). *Mgmt. Registry, Inc. v. A.W. Cos., Inc., et al.*, No. 17-cv-5009, (D. Minn. 2017).

v. M.R.I. has informed Batinich's counsel that it intends to depose him in the Minnesota action.

vi. The presiding judge in the Minnesota action issued a since-vacated temporary restraining order that specifically covered Batinich's conduct.

Venue is proper in a federal district where "a substantial part of the events or omissions giving rise to the claim occurred…" 28 U.S.C. § 1391(b)(2). Courts in this district have construed "a substantial part" to mean that the events or omissions in the desired forum were "part of the historical predicate for the instant suit." *E.g., Jackson v. N'Genuity Enters., Co.*, 2014 WL 4269448, *6 (N.D. Ill. Aug. 28, 2014); *Hanyuan Dong v. Garcia*, 553 F.Supp.2d 962, 965 (N.D. Ill. 2008); *Master Tech Prods., Inc. v. Smith*, 181 F.Supp.2d 910, 914 (N.D. Ill. 2002).

M.R.I. offers nothing to suggest that Batinich's conduct, although aimed at the state of Illinois, was not done in connection with the very Minnesota company that M.R.I. is currently suing in a Minnesota district court. Moreover, both M.R.I.'s Complaint in the Illinois action and its Amended Complaint in the Minnesota action discuss the same "emergency team meeting" where Batinich is alleged to have referenced "A.W. Companies, Inc." Batinich's role is thoroughly detailed in M.R.I.'s Amended Complaint in the Minnesota action, A.W. Companies' presence is evident

5

both explicitly and implicitly throughout M.R.I.'s Complaint against Batinich before this Court, and the undisputed record demonstrates an individual whose actions on behalf of a Minnesota company contribute to the "historical predicate for the instant suit." Additionally, Batinich has waived the personal jurisdiction requirement in Minnesota. *See Burger King Corp. v. Rudziewich*, 471 U.S. 462, 472 n.14 (1985) ("…the personal jurisdiction requirement is a waivable right…"), and M.R.I. has yet to argue substantively that venue or personal jurisdiction would not lie in Minnesota. Because our review of the record demonstrates that the Illinois action could properly be heard in a Minnesota forum, we agree with Batinich that we misunderstood his initial position on the § 1404(a) question and grant his request to reconsider the venue transfer portion of our Order.

Having already determined that the District of Minnesota would be a proper venue for the instant suit, we turn to the more discretionary inquiries that attend venue transfer considerations, as fully briefed by the parties in anticipation of the Court's January 26 Order: (1) the convenience of the parties and witnesses and (2) the interest of justice. 28 U.S.C. § 1404(a). "In passing on a motion for transfer, the district judge must consider the statutory factors in light of all the circumstances of the case." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Id*. While Batinich has the burden of establishing that the District of Minnesota is the

6

"clearly more convenient" forum, "[l]ess of a showing of inconvenience is needed for a § 1404(a) transfer than that for a *forum non conveniens* dismissal." *Id*. at 219—20. We address each factor – convenience and the interest of justice – in turn.

1. **Convenience of the Parties and Witnesses**

"To evaluate the convenience of one venue over another, courts look at the following five factors: '(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the convenience of the witnesses.'" *Jaramillo*, 664 F.Supp.2d at 913—14 (quoting *Amoco Oil Co. v. Mobil Oil Co.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000)).

a. **M.R.I.'s choice of forum**

M.R.I. relies on *Macedo v. Boeing Co.* for the proposition that "a plaintiff's choice of forum is given substantial weight when, as here, it is the home forum [of] AllStaff, [M.R.I.'s] affiliate, which Batinich does not deny working for in the past." 693 F.2d 683, 688 (7th Cir. 1982). The Court is flummoxed as to how M.R.I. drew such legal reasoning from the *Macedo* opinion. For one, *Macedo* concerned a *forum non conveniens* dismissal, which, although contemplative of certain aspects of § 1404(a) jurisprudence, is by and large its own, distinct inquiry. More pressingly, though, *Macedo* plainly does not stand for the premise that M.R.I. sets forth. Rather, the *Macedo* court stated simply that "[t]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum…." *Id*. "As always," and to counterbalance

this presumption, "if the balance of convenience suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court dismissal is proper." *Id*.

M.R.I.'s faulty characterization of the law is notably troubling in light of the accepted § 1404(a) standard in this district, where a "plaintiff's choice of forum is usually given substantial weight, particularly if it is also the *plaintiff's home forum*." *Jaramillo*, 664 F.Supp.2d at 914 (citing *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F.Supp.2d 731, 735 (N.D. Ill. 2007)) (emphasis added). Here, Illinois is plainly *not* M.R.I.'s home forum – that would be Kentucky, where M.R.I. is corporately organized and retains its principal place of business. That an affiliate of M.R.I. calls Illinois its home forum does not somehow transmogrify M.R.I. into an Illinois corporation.

"While a plaintiff's choice of forum is an important consideration in determining whether a motion to transfer should be granted, it, however, is not absolute." *Amoco Oil*, 90 F.Supp.2d at 960. We acknowledge and give ample consideration to M.R.I.'s decision to litigate this matter in the Land of Lincoln. But a home state, Illinois is not.

### b. Situs of the material events

Where, as here, trying to determine where the material events took place becomes a frustratingly obtuse inquiry, what would seem to be among the simpler concerns in a venue transfer dispute is decidedly not. The misconduct that Batinich is

alleged to have engaged in was directed at the state of Illinois. The "emergency team meeting" that permeates his misconduct, however, took place in Wisconsin. Additionally, Batinich's alleged misdeeds were part and parcel to intimately related transgressions alleged against a Minnesota company, A.W. Companies, in the Minnesota action. While we conclude that Batinich's alleged tortious activity towards the state of Illinois nudges the situs prong in favor of entertaining the case in the Northern District, our tepid conclusion on this factor is far from dispositive.

### c. Relative ease of access to sources of proof

This factor is of little consequence here, where neither party contends that access to sources of proof would be particularly cumbersome in either venue. Batinich presses that "a substantial part of the relevant documentary evidence…[is] located in Minnesota…." M.R.I. counters that it is "highly likely" that such evidence is located online or susceptible to simple scanning procedures. In either instance, the underlying facts do not indicate a situation where access to source of proof would be made materially more difficult were the case maintained in Illinois or transferred to Minnesota.

### d. Convenience of the parties

Citing to *Hess v. Gray*, 85 F.R.D. 15, 24 (N.D. Ill. 1979) and *Cunningham v. Cunningham*, 477 F.Supp. 632, 634 (N.D. Ill. 1979), M.R.I. instructs the Court: "In considering this issue, the Court begins from the premise that since plaintiff is a resident of this judicial district, its choice of venue is entitled to considerable

deference." M.R.I. is principally located in Louisville, Kentucky, and it is incorporated under the laws of that state. It is a "resident" of the Western District of Kentucky, not the Northern District of Illinois; we reject M.R.I.'s instruction to defer to its choice of venue.

In fact, the party-convenience factor concerns the parties' "respective residences and abilities to bear the expenses of trial in a particular forum." *Medi USA v. Jobst Inst., Inc.*, 791 F.Supp. 208, 210 (N.D. Ill. 1992). Here, neither party resides in Illinois or Minnesota. However, the Minnesota action was filed well before the Illinois action, and it is now well underway. More importantly, the Minnesota action requires the careful attention of M.R.I., its lawyers, and now that he is to be deposed in connection with the Minnesota suit, Batinich.

Indeed, M.R.I.'s preference for the Northern District of Illinois seems to have little to do with the forum's convenience, and far more to do with the deference that courts are supposed to give plaintiffs in selecting a choice of venue. While true that "at times a plaintiff's choice has been given substantial weight…it is usually not a dominant factor…." *Medi USA*, 791 F.Supp. at 210 (internal citations omitted). And, other than to say that (1) it has chosen Illinois as its preferred venue and (2) one of its affiliates resides therein, M.R.I. has offered little to no affirmative argument as to why the Northern District would be a more convenient locale for the parties than the District of Minnesota. Nothing before the Court depicts Illinois as a more convenient forum than Minnesota for M.R.I., a Kentucky business already heavily invested in the

10

adjacent Minnesota action. Moreover, we believe that Batinich would benefit from a transfer to a court familiar with the parties and the robust, related record of a case where Batinich's deposition will be taken. This factor falls in favor of transfer to the District of Minnesota.

### e. Convenience of the witnesses

"The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer." *First Nat. Bank v. El Camino Res., Ltd.*, 447 F.Supp.2d 902, 913 (N.D. Ill. 2006). For such a crucial factor, M.R.I. devotes it precious little attention, offering just two sentences to suggest that because the witnesses who "can attest to Batinich's solicitations and attempts to take confidential information and computers are all here in Illinois," the convenience of these "material witnesses" weighs in favor of the case's retention in the Northern District. Essentially then, M.R.I.'s contention is that the convenience of a few occurrence witnesses should be enough to keep the case in Illinois.

In reply briefing, Batinich paints a far different picture, stating that "*nearly all* of the witnesses in this matter will either already be participating as witnesses in M.R.I.'s District of Minnesota litigation or they live outside of Illinois." Batinich represents that he "would rely on the same witnesses in Illinois" as would A.W. Companies in the Minnesota action. Indeed, whole portions of M.R.I.'s Amended Complaint have been restated verbatim in the operative Complaint in the Illinois action, and each of the thirteen causes of action in this case have already been pled in

11

the District of Minnesota. That the role of significant witnesses might overlap between the two cases is not merely likely, it is virtually guaranteed. To haul witnesses into an Illinois courtroom whose roles are potentially duplicative in the Minnesota action – e.g., witnesses relating to the corporate structure of M.R.I. and AllStaff, the role of trade secrets in both actions, Batinich's role as an employee – would contravene the purpose of § 1404(a), "to prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge FBL—585*, 364 U.S. 19, 26 (1960)). This prong favors transfer to Minnesota.

## 2. Interest of Justice

"A decision to transfer venue under § 1404(a) relies heavily on consideration of the interests of justice," which calls for a deliberation on "the public's interest in conserving scarce judicial resources by 'efficient administration of the court system.'" *Jaramillo*, 664 F.Supp.2d at 915 (quoting *Coffey*, 796 F.2d at 220). There are a number of discrete concerns that courts entertain in interest-of-justice inquiries, such as the "speed at which the case will proceed to trial, the court's familiarity with the applicable law, the relation to the occurrence at issue, and the desirability of resolving controversies in their locale." *Amoco Oil*, 90 F.Supp.2d at 962. Here, these factors settle rather evenly between the parties. Because certain tortious activity was alleged to have occurred in Illinois, there is some weight to the notion that the suit should

proceed in a court familiar with the laws of that state. However, insofar as the issues to be litigated in Illinois recall those already underway in Minnesota, the judicial preference for efficiency recommends transferring the case to the Gopher State.

Yet, there is another, distinct concern in the interest-of-justice sphere that has lingered with the Court throughout its consideration of the transfer question. The "discouragement of forum-shopping" has been a feature of federal law for at least as long as the Erie Doctrine has been in effect. *Hanna v. Plumer*, 380 U.S. 460, 468 (1965); *see Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). And, although such trouble in § 1404(a) contexts typically arises from the defense side, via reverse forum-shopping, "certain behavior may count against a plaintiff's choice of forum, such as where there is evidence of forum-shopping or bad faith by a litigant." *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 979 n.2 (7th Cir. 2010).

Here, it is undisputed that not only was the Illinois action filed after M.R.I. received an unfavorable ruling in Minnesota, but so was a third associated action in arbitration in Kentucky – same plaintiff, related defendants, similar allegations and claims. There is nothing in the record to suggest that any of these actions were brought in bad faith. We do perceive, however, something of a shotgun approach to pleadings practice, one where a plaintiff dissatisfied with the cards dealt in one court sought to improve its odds with two new hands at two new tables. Such exploitation of the legal system is widely and historically frowned upon, and it conflicts

13

wholeheartedly with the efficient administration of justice. While the collected sub-inquiries that comprise the traditional interest-of-justice test fails to sway the venue pendulum in either party's direction, a more fundamental deliberation on the particulars and peculiarities of M.R.I.'s filing history reveals to the Court an instant case that may well have been borne of a cynicism untenable in the American system of civil litigation. In the interest of justice, transfer of the Illinois action to Minnesota is prudent.

*   *   *

All in all, the convenience and interest-of-justice factors tip the scale in favor of venue transfer to Minnesota. Having already determined that venue and personal jurisdiction lie in Minnesota, we now order the instant case to be transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404(a).

**II. Reconsideration of Our Order Denying Batinich's Motion to Dismiss for Lack of Personal Jurisdiction & Batinich's Motion to Strike Christin Good's Declaration**

As this matter is to be transferred to the District of Minnesota and will no longer pend before the Court, we deny, as moot, Batinich's motions to strike Christin Good's December 14, 2017 Declaration and to reconsider our Order declining to dismiss the case for lack of personal jurisdiction.

**CONCLUSION**

For the aforementioned reasons, we grant Batinich's motion to reconsider our Order denying his request for a venue transfer and order that this suit be transferred to

the District of Minnesota. Batinich's motions to strike Christin Good's December 14, 2017 Declaration and reconsider our Order declining to dismiss the case for lack of personal jurisdiction are denied as moot. It is so ordered.

Dated: 4/2/2018

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge